*648 Justice Ginsburg
delivered the opinion of the Court.
This case involves two federal prescriptions: the one-year limitation period imposed on federal habeas corpus petitioners by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U. S. C. § 2244(d)(1); and the rule that pleading amendments relate back to the filing date of the original pleading when both the original plea and the amendment arise out of the same “conduct, transaction, or occurrence,” Fed. Rule Civ. Proc. 15(c)(2).
Jacoby Lee Felix, California prisoner and federal habeas petitioner, was convicted in California state court of first-degree murder and second-degree robbery, and received a life sentence. Within the one-year limitation period AEDPA allows for habeas petitions, Felix filed a pro se petition in federal court. He initially alleged, inter alia, that the admission into evidence of videotaped testimony of a witness for the prosecution violated his rights under the Sixth Amendment’s Confrontation Clause. Five months after the expiration of AEDPA’s time limit, and eight months after the federal court appointed counsel to represent him, Felix filed *649 an amended petition in which he added a new claim for relief: He asserted that, in the course of pretrial interrogation, the police used coercive tactics to obtain damaging statements from him, and that admission of those statements at trial violated his Fifth Amendment right against self-incrimination. The question presented concerns the timeliness of Felix’s Fifth Amendment claim.
In ordinary civil proceedings, the governing Rule, Rule 8 of the Federal Rules of Civil Procedure, requires only "a short and plain statement of the claim showing that the pleader is entitled to relief.” Fed. Rule Civ. Proc. 8(a)(2). Rule 2(c) of the Rules Governing Habeas Corpus Cases requires a more detailed statement. The habeas rule instructs the petitioner to “specify all the grounds for relief available to [him]” and to “state the facts supporting each ground.”[1] By statute, Congress provided that a habeas petition “may be amended ... as provided in the rules of procedure applicable to civil actions.” 28 U. S. C. §2242. The Civil Rule on amended pleadings, Rule 15 of the Federal Rules of Civil Procedure, instructs: “An amendment of a pleading relates back to the date of the original pleading when . . . the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.” Fed. Rule Civ. Proc. 15(c)(2).
The issue before us is one on which federal appellate courts have divided: Whether, under Federal Rule of Civil Procedure 15(c)(2), Felix’s amended petition, filed after AEDPA’s one-year limitation and targeting his pretrial statements, relates back to the date of his original timely filed petition, which targeted the videotaped witness testimony. Felix urges, and the Court of Appeals held, that the *650 amended petition qualifies for relation back because both the original petition and the amended pleading arose from the same trial and conviction. We reverse the Court of Appeals’ judgment in this regard. An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA’s one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.
I
In 1995, after a jury trial in Sacramento, California, respondent Jacoby Lee Felix was found guilty of murder and robbery stemming from his participation in a carjacking in which the driver of the car was shot and killed. App. E to Pet. for Cert. 2-7. He was sentenced to life imprisonment without the possibility of parole. App. C to Pet. for Cert. 1-2. The current controversy centers on two alleged errors at Felix’s trial. Both involve the admission of out-of-court statements during the prosecutor’s case in chief, but the two are otherwise unrelated. One prompted a Fifth Amendment self-incrimination objection originally raised in the trial court, the other, a Sixth Amendment Confrontation Clause challenge, also raised in the trial proceedings.
Felix’s Fifth Amendment claim rested on the prosecution’s introduction of statements Felix made during pretrial police interrogation. These statements were adduced at trial on direct examination of the investigating officer. Felix urged that the police used coercive tactics to elicit the statements. Id., at 8-9. His Sixth Amendment claim related to the admission of the videotaped statements prosecution witness Kenneth Williams made at a jailhouse interview. The videotape records Williams, a friend of Felix, telling the police that he had overheard a conversation in which Felix described the planned robbery just before it occurred. When Williams testified at trial that he did not recall the police interview, the trial court determined that Williams’ loss of *651 memory was feigned, and that the videotape was admissible because it contained prior inconsistent statements. App. E to Pet. for Cert. 10-13.
On direct appeal, Felix urged, inter alia, that the admission of Williams’ videotaped statements violated Felix’s constitutional right to confront the witnesses against him. He did not,, however, argue that admission of his own pretrial statements violated his right to protection against self-incrimination. The intermediate appellate court affirmed Felix’s conviction and sentence, id., at 10-13,17, and the California Supreme Court denied his petition for review, App. F to Pet. for Cert. 2. Felix’s conviction became final on August 12,1997. App. C to Pet. for Cert. 10.
Under AEDPA’s one-year statute of limitations, Felix had until August 12, 1998, to file a petition for a writ of ha-beas corpus in federal district court. See § 2244(d)(1)(A). Within the one-year period, on May 8,1998, he filed a pro se petition for federal habeas relief. Felix’s federal petition repeated his Sixth Amendment objection to the admission of the Williams videotape, but he again failed to reassert the objection he made in the trial court to the admission of his own pretrial statements. App. G to Pet. for Cert. 1-7. On May 29,1998, a Magistrate Judge appointed counsel to represent Felix. App. C to Pet. for Cert. 6; App. H to Pet. for Cert. 2. Thereafter, on September 15,1998, the Magistrate Judge ordered Felix to file an amended petition within 30 days. Id., at 3. On Felix’s unopposed requests, that period was successively extended. Id., at 4-5. Pending the filing of an amended petition, the State was not required to interpose an answer.
On January 28, 1999, over five months after the August 12, 1998 expiration of AEDPA’s time limit, and eight months after the appointment of counsel to represent him, Felix filed an amended petition. Id., at 5. In this pleading, he reasserted his Confrontation Clause claim, and also asserted, for the first time post-trial, that his own pretrial statements to *652 the police were coerced and therefore inadmissible at trial. App. I to Pet. for Cert. 4. Further, he alleged that his counsel on appeal to the California intermediate appellate court was ineffective in failing to raise the coerced confession claim on direct appeal. Id., at 18-19.[2] In its answer to the amended petition, the State asserted that the Fifth Amendment claim was time barred because it was initially raised after the expiration of AEDPA’s one-year limitation period. Felix argued in response that the new claim related back to the date of his original petition. Because both Fifth Amendment and Confrontation Clause claims challenged the constitutionality of the same criminal conviction, Felix urged, the Fifth Amendment claim arose out of the “conduct, transaction, or occurrence set forth ... in the original pleading,” Fed. Rule Civ. Proc. 15(c)(2). App. C to Pet. for Cert. 16.
The Magistrate Judge recommended dismissal of Felix’s Fifth Amendment coerced statements claim. Relation back was not in order, the Magistrate said, because Felix’s “allegedly involuntary statements to police d[id] not arise out of the same conduct, transaction or occurrence as the videotaped interrogation of [prosecution witness] Kenneth Williams.” Ibid. It did not suffice, the Magistrate observed, that Felix’s Fifth and Sixth Amendment claims attack the same criminal conviction. Ibid. Adopting the Magistrate Judge’s report and recommendation in full, the District *653 Court dismissed the Fifth Amendment claim as time barred, and rejected the Confrontation Clause claim on its merits. App. B to Pet. for Cert. 1-3.
A divided panel of the Court of Appeals for the Ninth Circuit affirmed the District Court’s dismissal of Felix’s Confrontation Clause claim, but reversed the dismissal of his coerced statements claim and remanded that claim for further proceedings. 379 F. 3d 612 (2004). In the majority’s view, the relevant “transaction” for purposes of Rule 15(c)(2) was Felix’s “trial and conviction in state court.” Id., at 615. Defining the transaction at any greater level of specificity, the majority reasoned, would “unduly strai[n] the usual meaning of ‘conduct, transaction, or occurrence’ ” by dividing the “trial and conviction [into] a series of perhaps hundreds of individual occurrences.” Ibid. Judge Tallman concurred in part and dissented in part. In his view, defining “conduct, transaction, or occurrence” under Rule 15(c)(2) “so broadly that any claim stemming from pre-trial motions, the trial, or sentencing relates back to a timely-filed habeas petition” would “obliterate] AEDPA’s one year statute of limitation.” Id., at 618. “While an amendment offered to clarify or amplify the facts already alleged in support of a timely claim may relate back,” he reasoned, “an amendment that introduces a new legal theory based on facts different from those underlying the timely claim may not.” Id., at 621.
We granted certiorari, 543 U. S. 1042 (2005), to resolve the conflict among Courts of Appeals on relation back of habeas petition amendments. Compare 379 F. 3d, at 614 (if original petition is timely filed, amendments referring to the same trial and conviction may relate back); Ellzey v. United States, 324 F. 3d 521, 525-527 (CA7 2003) (same), with United States v. Hicks, 283 F. 3d 380, 388-389 (CADC 2002) (relevant transaction must be defined more narrowly than the trial and conviction); United States v. Espinoza-Saenz, 235 F. 3d 501, 503-505 (CA10 2000) (same); Davenport v. United States, 217 F. 3d 1341, 1344-1346 (CA11 2000) (same); United States v. *654 Pittman, 209 F. 3d 314, 317-318 (CA4 2000) (same); United States v. Duffus, 174 F. 3d 333, 337 (CA3 1999) (same); United States v. Craycraft, 167 F. 3d 451, 457 (CA8 1999) (same). We now reverse the Ninth Circuit’s judgment to the extent that it allowed relation back of Felix’s Fifth Amendment claim.
II
A
In enacting AEDPA in 1996, Congress imposed for the first time a fixed time limit for collateral attacks in federal court on a judgment of conviction. Section 2244(d)(1) provides: “A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.” See also §2255, ¶ 6 (providing one-year limitation period in which to file a motion to vacate a federal conviction).[3]
A discrete set of Rules governs federal habeas proceedings launched by state prisoners. See Rules Governing Section 2254 Cases in the United States District Courts.[4] The last of those Rules, Habeas Corpus Rule 11, permits application of the Federal Rules of Civil Procedure in habeas cases “to the extent that [the civil rules] are not inconsistent with any statutory provisions or [the habeas] rules.” See also Fed. Rule Civ. Proc. 81(a)(2) (The civil rules “are applicable to proceedings for... habeas corpus.”). Rule 11, the Advisory Committee’s Notes caution, “permits application of the civil rules only when it would be appropriate to do so,” and would not be “inconsistent or inequitable in the overall framework of habeas corpus.” Advisory Committee’s Note on Habeas Corpus Rule 11, 28 U. S. C., p. 480. In addition to the general prescriptions on application of the civil rules in federal *655 habeas cases, § 2242 specifically provides that habeas applications “may be amended ... as provided in the rules of procedure applicable to civil actions.”
The Civil Rule governing pleading amendments, Federal Rule of Civil Procedure 15, made applicable to habeas proceedings by § 2242, Federal Rule of Civil Procedure 81(a)(2), and Habeas Corpus Rule 11, allows pleading amendments with “leave of court” any time during a proceeding. See Fed. Rule Civ. Proc. 15(a). Before a responsive pleading is served, pleadings may be amended once as a “matter of course,” i. e., without seeking court leave. Ibid. Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings “ar[i]se out of the conduct, transaction, or occurrence.” Rule 15(c)(2).
The “original pleading” to which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas proceeding. Under Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide “fair notice of what the plaintiff’s claim is and the grounds upon which it rests.” Conley v. Gibson, 355 U. S. 41, 47 (1957). Habeas Corpus Rule 2(c) is more demanding. It provides that the petition must “specify all the grounds for relief available to the petitioner” and “state the facts supporting each ground.” See also Advisory Committee’s Note on subd. (c) of Habeas Corpus Rule 2,28 U. S. C., p. 469 (“In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important . . . .”); Advisory Committee’s Note on Habeas Corpus Rule 4, 28 U. S. C., p. 471 (“ ‘[N]otice’ pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error.” (internal quotation marks omitted)). Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:
*656 “CAUTION: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.” Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App., 28 U. S. C., p. 685 (2000 ed., Supp. V) (emphasis in original).
A prime purpose of Rule 2(c)’s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to “show cause why the writ should not be granted.” §2243. Under Habeas Corpus Rule 4, if “it plainly appears from the petition ... that the petitioner is not entitled to relief in the district court,” the court must summarily dismiss the petition without ordering a responsive pleading. If the court orders the State to file an answer, that pleading must “address the allegations in the petition.” Rule 5(b).
B
This case turns on the meaning of Federal Rule of Civil Procedure 15(c)(2),s relation-back provision in the context of federal habeas proceedings and AEDPA’s one-year statute of limitations. Rule 15(c)(2), as earlier stated, provides that pleading amendments relate back to the date of the original pleading when the claim asserted in the amended plea “arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.” The key words are “conduct, transaction, or occurrence.” The Ninth Circuit, whose judgment we here review, in accord with the Seventh Circuit, defines those words to allow relation back of a claim first asserted in an amended petition, so long as the new claim stems from the habeas petitioner’s trial, conviction, or sentence. Under that comprehensive definition, *657 virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto. See Espinoza-Saenz, 235 F. 3d, at 505 (A “majority of amendments” to habeas petitions raise issues falling under the “broad umbrella” of “a defendant’s trial and sentencing.”); Hicks, 283 F. 3d, at 388.
The majority of Circuits, mindful of “Congress’ decision to expedite collateral attacks by placing stringent time restrictions on [them],” ibid., define “conduct, transaction, or occurrence” in federal habeas cases less broadly. See id., at 388-389; Espinoza-Saenz, 235 F. 3d, at 503-505; Davenport, 217 F. 3d, at 1344-1346; Pittman, 209 F. 3d, at 317-318; Duffus, 174 F. 3d, at 337; Cray craft, 167 F. 3d, at 457. They allow relation back only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in “both time and type” from the originally raised episodes. Ibid. Because Felix’s own pretrial statements, newly raised in his amended petition, were separated in time and type from witness Williams’ videotaped statements, raised in Felix’s original petition, the former would not relate back under the definition of “conduct, transaction, or occurrence” to which most Circuits adhere.
We are not aware, in the run-of-the-mine civil proceedings Rule 15 governs, of any reading of “conduct, transaction, or occurrence” as capacious as the construction the Ninth and Seventh Circuits have adopted for habeas cases. Compare Maegdlin v. International Assn, of Machinists and Aerospace Workers, 309 F. 3d 1051, 1052 (CA8 2002) (allowing relation back where original complaint alleged that defendant union had breached its duty of fair representation by inadequately representing plaintiff because of his gender, and amended complaint asserted a Title VII gender discrimination claim based on the same differential treatment); Clip *658 per Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F. 2d 1240, 1246, 1259, n. 29 (CA9 1982) (claim asserting that defendant included fraudulent information in rate protests filed with the Interstate Commerce Commission related back to original complaint, which asserted that defendant filed the same rate protests “for the purpose of. . . restricting . . . competition” (internal quotation marks omitted));[5] Santana v. Holiday Inns, Inc., 686 F. 2d 736, 738 (CA9 1982) (original complaint alleging slander and amendment alleging interference with employment relations arose out of the same conduct or occurrence because both were based on defendant’s making allegedly untruthful statements about plaintiff’s behavior to plaintiff’s employer); Rural Fire Protection Co. v. Hepp, 366 F. 2d 355, 361-362 (CA9 1966) (in a Fair Labor Standards Act of 1938 suit alleging minimum wage violations for certain pay periods, amendment asserting the same type of violation during an additional pay period related back), with Nettis v. Levitt, 241 F. 3d 186, 193 (CA2 2001) (disallowing relation back where Nettis’ original complaint alleged that his employer retaliated in response to Nettis’ objections to employer’s sales tax collection procedure, and amendment alleged retaliation for Nettis’ report of payroll and inventory irregularities); In re Coastal Plains, Inc., 179 F. 3d 197, 216 (CA5 1999) (Coastal Plains’s claim that creditor interfered with business relations by attempt *659 ing to sell Coastal Plains to a third party did not relate back to claim based on creditor’s failure to return inventory to Coastal Plains, even though both claims were linked to creditor’s alleged “broader plan to destroy Coastal [Plains]”); Sierra Club v. Penfold, 857 F. 2d 1307, 1315-1316 (CA9 1988) (where original complaint challenged the manner in which an agency applied a regulation, an amendment challenging the agency’s “conduct in adopting the regulatio[n]” did not relate back). See also Jackson v. Suffolk County Homicide Bureau, 135 F. 3d 254, 256 (CA2 1998) (although all of plaintiff’s 42 U. S. C. § 1983 claims arose out of a single state-court criminal proceeding, plaintiff’s First Amendment claims did not arise out of the same conduct as the originally asserted excessive force claims, and therefore did not relate back). As these decisions illustrate, Rule 15(c)(2) relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common “core of operative facts” uniting the original and newly asserted claims. See Clipper Exxpress, 690 F. 2d, at 1259, n. 29; 6A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1497, p. 85 (2d ed. 1990).
Felix asserts that he seeks, and the Ninth Circuit accorded, no wider range for Rule 15(c)’s relation-back provision than this Court gave to the Rule’s key words “conduct, transaction, or occurrence” in Tiller v. Atlantic Coast Line R. Co., 323 U. S. 574, 580-581 (1945). We disagree. In Tiller, a railroad worker was struck and killed by a railroad car. His widow sued under the Federal Employers’ Liability Act, 45 U. S. C. § 51 et seq., to recover for his wrongful death. She initially alleged various negligent acts. In an amended complaint, she added a claim under the Federal Boiler Inspection Act for failure to provide the train’s locomotive with a rear light. We held that the amendment related back, and therefore avoided a statute of limitations bar, even though the amendment invoked a legal theory not suggested by the original complaint and relied on facts not originally asserted.
*660 There was but one episode-in-suit in Tiller, a worker’s death attributed from the start to the railroad’s failure to provide its employee with a reasonably safe place to work. The federal rulemakers recognized that personal injury plaintiffs often cannot pinpoint the precise cause of an injury prior to discovery. See 5 C. Wright & A. Miller, Federal Practice and Procedure §1215, pp. 138-143 (2d ed. 1990). They therefore included in the Appendix to the Federal Rules an illustrative form indicating that a personal injury plaintiff could adequately state a claim for relief simply by alleging that the defendant negligently operated a certain instrumentality at a particular time and place. See Form 9, Complaint for Negligence, Forms App., Fed. Rule Civ. Proc., 28 U. S. C. App., p. 829. The widow in Tiller met that measure. She based her complaint on a single “occurrence,” an accident resulting in her husband’s death. In contrast, Felix targeted separate episodes, the pretrial police interrogation of witness Williams in his original petition and his own interrogation at a different time and place in his amended petition.
Felix contends, however, that his amended petition qualifies for relation back because the trial itself is the “transaction” or “occurrence” that counts. See Brief for Respondent 21-23. Citing Chavez v. Martinez, 538 U. S. 760 (2003) (plurality opinion), Felix urges that neither the videotaped interview with witness Williams nor the pretrial police interrogation to which Felix himself was exposed transgressed any constitutional limitation. Until the statements elicited by the police were introduced at trial, Felix argues, he had no actionable claim at all. Both the confrontation right he timely presented and the privilege against self-incrimination he asserted in his amended petition are “trial right[s],” Felix underscores. Brief for Respondent 21 (emphasis deleted). His claims based on those rights, he maintains, are not “separate,” id., at 22; rather, they are related in time and type, for “they arose on successive days during the trial and both *661 challenged [on constitutional grounds] admission of pretrial statements,” id., at 22-23.
Felix artificially truncates his claims by homing in only on what makes them actionable in a habeas proceeding. We do not here question his assertion that his Fifth Amendment right did not ripen until his statements were admitted against him at trial. See Chavez, 538 U. S., at 766-767. Even so, the essential predicate for his self-incrimination claim was an extrajudicial event, i. e., an out-of-court police interrogation. The dispositive question in an adjudication of that claim would be the character of Felix’s conduct, not in court, but at the police interrogation, specifically, did he answer voluntarily or were his statements coerced. See Haynes v. Washington, 873 U. S. 503, 513-514 (1963) (vol-untariness is evaluated by examining the “totality of circumstances” surrounding the “making and signing of the challenged confession”).
Habeas Corpus Rule 2(c), we earlier noted, see supra, at 655-656, instructs petitioners to “specify all [available] grounds for relief” and to “state the facts supporting each ground.” Under that Rule, Felix’s Confrontation Clause claim would be pleaded discretely, as would his self-incrimination claim. Each separate congeries of facts supporting the grounds for relief, the Rule suggests, would delineate an “occurrence.” Felix’s approach, the approach that prevailed in the Ninth Circuit, is boundless by comparison. A miscellany of claims for relief could be raised later rather than sooner and relate back, for “conduct, transaction, or occurrence” would be defined to encompass any pretrial, trial, or post-trial error that could provide a basis for challenging the conviction. An approach of that breadth, as the Fourth Circuit observed, “views ‘occurrence’ at too high a level of generality.” Pittman, 209 F. 3d, at 318.[6]
*662 Congress enacted AEDPA to advance the finality of criminal convictions. See Rhines v. Weber, 544 U. S. 269, 276 (2005). To that end, it adopted a tight time line, a one-year limitation period ordinarily running from “the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review,” 28 U. S. C. § 2244(d)(1)(A). If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA’s limitation period would have slim significance. See 379 F. 3d, at 619 (Tallman, J., concurring in part and dissenting in part) (Ninth Circuit’s rule would permit “the ‘relation back’ doctrine to swallow AEDPA’s statute of limitation”); Pittman, 209 F. 3d, at 318 (“If we were to craft such a rule, it would mean that amendments . . . would almost invariably be allowed even after the statute of limitations had expired, because most [habeas] claims arise from a criminal defendant’s underlying conviction and sentence.”); Duffus, 174 F. 3d, at 338 (“A prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period.”). The very purpose of Rule 15(c)(2), as the dissent notes, is to “qualify a statute of limitations.” Post, at 666. *663 But “qualify” does not mean repeal. See Fuller v. Marx, 724 F. 2d 717, 720 (CA8 1984). Given AEDPA’s “finality” and “federalism” concerns, see Williams v. Taylor, 529 U. S. 420, 436 (2000); Hicks, 283 F. 3d, at 389, it would be anomalous to allow relation back under Rule 15(c)(2) based on a broader reading of the words “conduct, transaction, or occurrence” in federal habeas proceedings than in ordinary civil litigation, see supra, at 657-659.
Felix urges that an unconstrained reading of Rule 15(c)(2) is not problematic because Rule 15(a) arms district courts with “ample power” to deny leave to amend when justice so requires. See Brief for Respondent 31-33. Under that Rule, once a responsive pleading has been filed, a prisoner may amend the petition “only by leave of court or by written consent of the adverse party.” Rule 15(a); see Ellzey v. United States, 324 F. 3d, at 526 (AEDPA’s aim to “expedite resolution of collateral attacks ... should influence the exercise of discretion under Rule 15(a) — which gives the district judge the right to disapprove proposed amendments that would unduly prolong or complicate the case.”). This argument overlooks a pleader’s right to amend without leave of court “any time before a responsive pleading is served.” Rule 15(a). In federal habeas cases that time can be rather long, as indeed it was in the instant case. See supra, at 651. Under Habeas Corpus Rule 4, a petition is not immediately served on the respondent. The judge first examines the pleading to determine whether “it plainly appears . . . that the petitioner is not entitled to relief.” Only if the petition survives that preliminary inspection will the judge “order the respondent to file an answer.” In the interim, the petitioner may amend his pleading “as a matter of course,” as Felix did in this very case. Rule 15(a). Accordingly, we do not regard Rule 15(a) as a firm .check against petition amendments that present new claims dependent upon discrete facts after AEDPA’s limitation period has run.
*664 Our rejection of Felix’s translation of same “conduct, transaction, or occurrence” to mean same “trial, conviction, or sentence” scarcely leaves Rule 15(c)(2) “meaningless in the habeas context,” 379 F. 3d, at 615. So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.[7] Our reading is consistent with the general application of Rule 15(c)(2) in civil cases, see supra, at 657-659, with Habeas Corpus Rule 2(c), see supra, at 655-656, and with AEDPA’s installation of a tight time line for §2254 petitions, see supra, at 662-663.[8]
*665 H: * *
As to the question presented, for the reasons stated, the judgment of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 The Habeas Corpus Rules were recently amended, effective December 1, 2004. Because the amended Rules are not materially different from those in effect when Felix filed his habeas petition, this opinion refers to the current version of the Rules.

 Because Felix had not presented his coerced statements Fifth Amendment claim on appeal to the California courts, the State moved to dismiss the amended petition on the ground that it contained both exhausted and unexhausted claims. See 28 U. S. C. § 2254(b)(1)(A); Brief for Respondent 6-7. Before the Magistrate Judge acted on the motion, Felix presented the coerced statements/ineffective-assistance claim to the California Supreme Court in a habeas petition. Opposition to Respondents’ Motion to Dismiss in No. Civ. S-98-0828 WBS GGH P (ED Cal.), p. 3. After that court denied the petition without comment, the State withdrew its motion to dismiss. See Request to Vacate Hearing on Motion to Dismiss in No. Civ. S-98-0828 WBS GGH P (ED Cal.), pp. 1-2.

 Section 2255 establishes a separate avenue for postconviction challenges to federal, as opposed to state, convictions.

 Habeas corpus proceedings are characterized as civil in nature. See, e. g., Fisher v. Baker, 203 U. S. 174, 181 (1906).

 The dissent asserts that Clipper Exxpress is comparable to this case in according Rule 15(c)(2) a ‘“capacious”' reading. Post, at 668, n. 2. Clipper Exxpress involved a series of allegedly sham protests, commonly designed to restrain trade, a charge of the pattern or practice type. The amendment in question added a fraud charge, a new legal theory tied to the same operative facts as those initially alleged. 690 F. 2d, at 1259, n. 29. That unremarkable application of the relation-back rule bears little resemblance to the argument made by Felix and embraced by the dissent — that all manner of factually and temporally unrelated conduct may be raised after the statute of limitations has rim and relate back, so long as the new and originally pleaded claims challenge the same conviction. See infra, at 659-661.

 The dissent builds a complex discussion on an apparent assumption that claim preclusion operates in habeas cases largely as it does in mine-run civil cases. See post, at 673-674. Ironically, few habeas petitions *662 would survive swift dismissal were that so, for the very objective of the petition is to undo a final judgment after direct appeals have been exhausted or are time barred. On judicial and legislative development of standards governing successive habeas petitions, standards that do not track the Restatement of Judgments, see Schlup v. Delo, 513 U. S. 298, 317-320 (1995); 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure § 28.2b, pp. 1270-1275 (4th ed. 2001); Note, Developments in the Law — Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1113, 1148-1154 (1970). The dissent would read Rule 15(c)(2)’s words, “conduct, transaction, or occurrence,” into AEDPA’s provisions governing second or successive petitions and motions (28 U. S. C. §§ 2244(b) and 2255, ¶8), although Congress did not put those words there. Nor is there any other reason to believe that Congress designed AEDPA’s confinement of successive petitions and motions with a view to the relation-back concept employed in Rule 15(c)(2).

 For example, in Mandacina v. United States, 328 F. 3d 995, 1000-1001 (CA8 2003), the original petition alleged violations of Brady v. Maryland, 373 U. S. 83 (1963), while the amended petition alleged the Government’s failure to disclose a particular report. Both pleadings related to evidence obtained at the same time by the same police department. The Court of Appeals approved relation back. And in Woodward v. Williams, 263 F. 3d 1135, 1142 (CA10 2001), the appeals court upheld relation back where the original petition challenged the trial court’s admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted. See also 3 J. Moore et al., Moore’s Federal Practice § 15.19[2], p. 15-82 (3d ed. 2004) (relation back ordinarily allowed “when the new claim is based on the same facts as the original pleading and only changes the legal theory”).

 The dissent is concerned that our decision “creates an unfair disparity between indigent habeas petitioners and those able to afford their own counsel.” Post, at 665; see post, at 675 (“[TJoday’s decision . . . will fall most heavily on the shoulders of indigent habeas petitioners who can afford no counsel without the assistance of the court.”). The concern is understandable, although we note that in Felix’s case, counsel was appointed, and had some two and a half months to amend the petition before AEDPA’s limitation period expired. See supra, at 651. That was ample time to add a claim based on the alleged pretrial extraction of damaging statements from Felix. Ordinarily, as we observed in Halbert v. Michigan, ante, at 624, n. 8, the government (federal or state) “ ‘need not equalize economic conditions’ between criminal defendants of lesser and greater wealth” (quoting Griffin v. Illinois, 351 U. S. 12, 23 (1956) (Frankfurter, J., concurring in judgment)); see Pennsylvania v. Finley, 481 U. S. 551, 557 (1987) (holding that States need not provide appointed counsel in post-conviction proceedings). This case, it is inescapably true, does not fit *665 within the confined circumstances in which our decisions require appointment of counsel for an indigent litigant at a critical stage to ensure his meaningful access to justice. See Halbert, ante, at 610-612, 624, n. 8.