**Ryan COURTADE, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**CIVIL NO. 2:16cv736**
**[ORIGINAL CRIMINAL NO. 2:15cr29]**

United States District Court,
E.D. Virginia,
Norfolk Division.

Signed 03/20/2017

Timothy R. Clinton, Esquire, Clinton Brook & Peed, Washington, DC, for Petitioner.

Elizabeth M. Yusi, Assistant United States Attorney, Norfolk, VA, for Respondent.

## MEMORANDUM ORDER

Rebecca Beach Smith, Chief Judge

This matter comes before the court on the government's "Motion to Compel Disclosure of Information from Former Defense Counsel" ("Motion to Compel"), filed on January 30, 2017. ECF No. 54. The Petitioner filed a Response to the Motion to the Compel on February 13, 2017. ECF No. 55. That same day, the Petitioner also filed a "Motion to Stay Discovery Pending Resolution of Petitioner's Legal Claims and for a Protective Order" ("Motion for Stay and for Protective Order"). ECF No. 56. The government filed a submission on February 21, 2017, which contained both a Reply in support of its Motion to Compel as well as a Response in opposition to the Petitioner's Motion for Stay and for Protective Order ("Reply and Response").

ECF No. 59. The Petitioner filed a Reply in support of his Motion for Stay and for Protective Order on February 28, 2017. ECF No. 60. The matter is now ripe for review.

## I. PROCEDURAL HISTORY

On August 25, 2015, the Petitioner, appearing with counsel, pled guilty to Count Two of the Superseding Indictment, which charged him with Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). ECF No. 27. On December 18, 2015, the Petitioner was sentenced to one hundred twenty (120) months' imprisonment, and a judgment was entered on December 21, 2015. ECF No. 48. The Petitioner did not appeal, and his judgment became final on January 4, 2016. See Fed. R. App. P. 4(b) (1) (A) (i); United States v. Diallo, 581 Fed.Appx. 226, 227 (4th Cir. 2014) (finding the appellant's "federal convictions became final ... upon the expiration of the fourteen-day period for filing a direct appeal").

On December 22, 2016, the Petitioner filed a "Motion to Vacate Under 28 U.S.C. § 2255" ("§ 2255 Motion"). ECF No. 51. In his § 2255 Motion, the Petitioner alleges, inter alia, ineffective assistance of counsel. Specifically, the Petitioner alleges that his former attorneys "provided ineffective assistance by advising him to plead guilty without informing him that his conduct was not criminal under the statute" and were "ineffective for failing to consult with [the Petitioner] regarding whether to file an appeal." § 2255 Mot. at 41–42. On January 18, 2017, the court ordered the government to respond to the § 2255 Motion. ECF No. 53.

The United States subsequently filed the instant Motion to Compel, seeking information from the Petitioner's former counsel to defend against those of the Petitioner's claims that puts his former coun-

sel's conduct and their communications at issue in this proceeding. See Mot. to Compel at 1, 3. The Petitioner, in his Motion for Stay and for Protective Order, requests a bifurcated habeas proceeding in which the court stays discovery into his "factual claims" and resolves his "legal claims" first. Mot. for Stay and for Protective Order at 1. The Petitioner additionally requests that any discovery of privileged attorney-client communications be governed by a protective order. The Petitioner specifically requests that the court "supervise disclosures by his trial counsel through in camera review of affidavits, as necessary[,] ... prevent[ ] ex parte communications between [the] [P]etitioner's former trial counsel and the government [,] ... prohibit[ ] the use of formerly-privileged information by the government in any future proceedings," id. at 15, and screen "any government attorneys involved in these proceedings ... from any subsequent criminal proceedings involving [the Petitioner]." Id. at 14.

## II. LEGAL STANDARDS

█ "[A] petitioner who claims ineffective assistance of counsel in a habeas petition waives the protection of attorney-client privilege over information that is relevant to those claims." LaBorde v. Virginia, No. 1:10cv493, 2011 WL 2358510, at *2 (E.D.Va. June 9, 2011); see United States v. Pinson, 584 F.3d 972, 978 (10th Cir. 2009) ("Given the ample, unanimous federal authority on point, we hold that when a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove his claim."); Bittaker v. Woodford, 331 F.3d 715, 716 (9th Cir. 2003); Butler v. United States, Nos. DKC 16–0330, DKC 12–0116, 2016 WL 1427090, at *2 (D. Md. Apr. 12, 2016); Harris v. United States, Nos. 3:15cv7814, 3:14cr42–01, 2016 WL 236988, at *2

(S.D.W.Va. Jan. 19, 2016); see also Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions."). This rule is rooted in fairness: a party cannot "us[e] the privilege as both a shield and a sword. In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." Bittaker, 331 F.3d at 719 (citations omitted). In such cases, "[t]he party asserting the claim is said to have implicitly waived the privilege." Id.

█ However, this waiver is not limitless. The Fourth Circuit has approved a "narrow waiver rule" as " 'requiring the petitioner to enter ... a broad waiver would force him to [a] painful choice'—a choice between 'asserting his ineffective assistance claim and risking a trial [in the future, if successful on his habeas claim] where the prosecution can use against him every statement he made to his first lawyer,' or 'retaining the privilege but giving up his ineffective assistance claim.' " United States v. Nicholson, 611 F.3d 191, 217 (4th Cir. 2010) (first and second alteration in original) (quoting Bittaker, 331 F.3d at 722–23). Such a rule authorizes the use of protective orders, in the event a petitioner successfully litigates his habeas claims and a new trial or sentencing is ordered, to "restore [a petitioner] to the position he would have occupied, had the first trial [or sentencing] been constitutionally error-free." See Nicholson, 611 F.3d at 217 (quoting Bittaker, 331 F.3d at 722 (internal quotation marks omitted)) (determining that a successful habeas petitioner was entitled to a protective order on remand

for resentencing that would prevent the government from using attorney-client communications disclosed during the habeas proceeding against the petitioner during his resentencing).

Additionally, Federal Rule of Evidence 502, "enacted ·to explicitly deal with the effect and extent of a waiver of the attorney-client privilege in a [f]ederal proceeding," Harris, 2016 WL 236988, at *2, sets out that

> [w]hen [a] disclosure is made in a Federal proceeding ... and waives the attorney-client privilege ... the waiver extends to an undisclosed communication or information ... only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the ·same subject matter; and (3) they ought in fairness to ·be considered together.

Fed. R. Evid. 502(a). Notably, courts have held that when habeas petitioners disclose communications with former counsel for the purpose of pursuing the § 2255 motion, the petitioners are said to have "intentionally waived the attorney-client privilege that attached" to those communications. Butler, 2016 WL 1427090, at *3 (emphasis added); see Cross v. United States, Nos. 5:16cv6097, 5:15cr79, 2016 WL 4766490, at *1 (S.D.W. Va. Sept. 12, 2016).

■ Finally, the court "must take into account the professional and ethical responsibilities" of. the Petitioner's former counsel as they have "a basic duty under any jurisdiction's standards of professional conduct to protect the [Petitioner's] attorney-client privilege." Harris, 2016 WL 236988, at *1; see Butler, 2016 WL 1427090, at *2. The Local Rules of this court establish that, with limited exception, the Virginia Rules of Professional Conduct ("VRPC") govern the "ethical standards relating to the practice of law" in cases before this court. E.D. Va. Crim. R.

57.4(1); E.D. Va. Civ. R. 83.1(1). VRPC 1.6(a) prohibits the disclosure of information protected by the attorney-client privilege except in limited circumstances. VRPC .1.6(b) permits an attorney to disclose privileged information "[t]o the extent [the] lawyer reasonably believes necessary ... to comply with ... a court order" or "to respond to allegations in any proceeding concerning the lawyer's representation of the client." Id. 1.6(b) (1)–(2).

## III. ANALYSIS

### A.· The Government's Motion to Compel and the Petitioner's Motion for Stay of Discovery

■ In ruling on the instant motions, the court must first assess whether the government has shown "good cause" for the discovery it requests, pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings. In its Motion to Compel, the government has stated that the discovery sought is "critical" to resolution of certain claims in the Petitioner's § 2255 Motion, in particular his claims of ineffective assistance of counsel. Mot. to Compel at 1, 3. The Petitioner agrees. Mot. for Stay and for Protective Order at 7 ("[T]he government unquestionably will need limited discovery into [the Petitioner's] privileged communications to defend against his factual claims."). Therefore, the government has shown good cause for conducting discovery.

■ The court now turns to the Petitioner's. Motion for Stay of Discovery. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of ·the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Air Line Pilots Ass'n v. Miller,

523 U.S. 866, 879 n.6; 118 S.Ct. 1761, 140 L.Ed.2d 1070 (1998) (alteration in original) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (internal quotation marks omitted)). The question posed by the Petitioner's Motion for Stay is the timing of discovery. The Petitioner requests the stay to, in effect, bifurcate this habeas proceeding into two phases: Phase One would resolve the Petitioner's "legal claims" and, should he lose in Phase One, the court would then order discovery and address the Petitioner's "factual claims" in Phase Two.[1] Mot. for Stay and for Protective Order at 1. The court is unconvinced by the Petitioner's arguments that a stay is necessary in this case, or is indeed beneficial.

First, by putting the conduct of his former counsel and their communications into issue in this proceeding, see § 2255 Mot. at 17–22, 35–36, 40–45, and by filing an affidavit disclosing some of the content of those communications, see Courtade Aff., ECF No. 51–1 at 1–6, as well as other exhibits, see Exhibits 4–12, ECF No. 51–1 at 17–34, (various emails between former counsel, the prosecutor, and the Petitioner's mother), the Petitioner has intentionally waived the attorney-client privilege with respect to those communications. Fed. R. Evid. 502(a); Cross, 2016 WL 4766490, at *1; Butler, 2016 WL 1427090, at *3. The Petitioner does not dispute this. Pet.'s Resp. at 2; Mot. for Stay and for Protective Order at 5. The Petitioner's argument for his Motion for Stay thus boils down to this: he will incur "potential [ly] ... substantial" harm by discovery now as opposed to discovery later. Mot. for Stay and for Protective Order at 5. However, the Petitioner does not specify what the harm will be by discovery now that cannot be remedied by a protective order.[2] See Nicholson, 611 F.3d at 217 (determining that a successful habeas petitioner was entitled to a protective order on remand for resentencing that would prevent the government from using attorney-client communications disclosed during the habeas proceeding against the petitioner during his resentencing and that this would be sufficient to restore the petitioner to the position he would have been in had his original sentencing occurred without constitutional error).

On the other hand, however, the government has shown good cause for needing discovery, see supra at 703, and has stated it will be burdened by bifurcation of the issues. Gov't Reply and Resp. at 2. The court must also consider judicial economy, and "the interest of the criminal justice system in the finality of convictions, an interest repeatedly confirmed [by] the Supreme Court." United States v. Fugit, 703 F.3d 248, 252 (4th Cir. 2012).

The Petitioner's case is not unusual or extraordinary from other habeas cases, most of which include both legal and factual claims, and, in particular, claims alleging ineffective assistance of counsel. Moreover, many habeas claims involve mixed questions of "fact" and "law." For example, although an ineffective assistance of counsel claim may appear to be a factual claim, it may be resolved on legal grounds if the court determines that, under the facts a

---

1. The Petitioner sorts his claims as follows: His "legal claims" are (1) the video he possessed did not constitute child pornography as defined by 18 U.S.C. §§ 2252 (a) and 2256(2) (A), and (2) the district court failed to establish a factual basis for his plea under Rule 11 of the Federal Rules of Criminal Procedure. His "factual claims" are (1) the Petitioner's plea was not knowing and voluntary, (2) his counsel provided ineffective assistance by failing to explain a valid defense to the charges, and (3) his counsel provided ineffective assistance by failing to consult with him regarding filing an appeal. Mot. for Stay and for Protective Order at 2.

2. See infra Part IV (issuing protective order).

petitioner alleges or the court finds, the counsel's conduct was not objectively unreasonable or there was no prejudice. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052 (articulating the two-prong test for ineffective assistance of counsel, which requires a showing of both that former counsel's conduct fell below an objective standard of reasonableness and that the deficient performance was prejudicial to the litigant). Bifurcation of issues into factual and legal ones would potentially require the court to evaluate all of a habeas petitioner's claims multiple times: first to sort the claims into factual and legal issues; then to review the legal issues; then to determine the factual issues; and then to apply the law to the facts of the claims. Such an approach does not bode well for judicial or litigation economy. In fact, the bifurcation and stay urged by the Petitioner is, in the court's opinion, the very definition of unworkable and overly burdensome, and it would cause untold delay in this habeas proceeding and in other habeas proceedings before this court, if so adopted.

Finally, considering the above interests, this court cannot conclude that a stay of discovery and corresponding bifurcation of this habeas proceeding is warranted to protect the Petitioner's interest in privileged communications with his former counsel, particularly when there is an easily available remedy to the Petitioner, i.e., a protective order,[3] and when the Petitioner intentionally waived the privilege by asserting claims and presenting evidence that put the former counsel's conduct and communications with the Petitioner at issue. Therefore, the Petitioner's Motion for a Stay of Discovery, and for bifurcation of the proceeding into factual and legal issues, is **DENIED**. Accordingly, the government's Motion to Compel is **GRANTED**.[4]

### B. The Petitioner's Motion for Protective Order

■ The court begins by noting, again, that the Petitioner has intentionally waived the attorney-client privilege with respect to his former counsel's conduct and their communications put into issue and disclosed by his § 2255 Motion and supporting documentation, and he does not dispute this waiver or the government's need for discovery into these privileged communications. See supra at 703, 704. Accordingly, under VRPC 1.6(b)(2), the Petitioner's former counsel may reveal information reasonably necessary to respond to allegations concerning their representation of the Petitioner, in connection with this habeas proceeding, without violating the VRPC.

However, the court recognizes that protective orders are "entirely justified," being "consistent with the interests of the habeas petitioner in obtaining a fair adjudication of his petition and securing a retrial untainted by constitutional errors" in the event a petitioner is successful in persuading a federal court to grant habeas relief. Nicholson, 611 F.3d at 217 (quoting Bittaker, 331 F.3d at 722, 728 (internal quotation marks omitted)). Accordingly, the court exercises its "authority to issue a protective order governing production of the privileged information, including the method by which currently undisclosed communications will be disclosed." Harris, 2016 WL 236988, at *3 (emphasis added).

With respect to method, affidavits filed with the court are the proper vehicle for such disclosures for three reasons. First, Rule 7 of the Rules Governing Section 2255 Proceedings expressly authorizes the use of affidavits to expand the record. Second, "affidavits ... supply the basic information required by the United States

---

3. See infra Part IV.

4. This grant is in accordance with the limitations imposed infra Part IV.

to allow it to respond to [a petitioner's] section 2255 motion while simultaneously ensuring a reasonable limitation on the breadth of the waiver of the attorney-client privilege." Harris, 2016 WL 236988, at *3; see Cross, 2016 WL 4766490, at *3. Third, "this ordered-filing brings the affidavit[s] and disclosure[s] within the court's supervision," to the extent there are any concerns about disclosures occurring outside of "formal" proceedings like evidentiary hearings. Dunlap v. United States, Nos. 4:09cr854, 4:11cv70082, 2011 WL 2693915, at *1 n.4 (D.S.C. July 12, 2011). For these reasons, in camera review of the affidavits is unnecessary. Should an affidavit be improper, the Petitioner may bring the matter to the attention of the court and, if appropriate, the court will strike the affidavit from the record. Additionally, any use of the affidavits outside of this habeas proceeding is prohibited by the court's protective order issued herein, infra Part IV.

Further, the Petitioner provides no binding authority for the request for a prohibition on all ex parte communica-

tions between the government and the Petitioner's former counsel,[5] and such would significantly impair the ability of the government to prepare its case, which may involve the need to interview witnesses, including former counsel, for its response to the Petitioner's pleadings and for any evidentiary hearing that may occur. Therefore, the government may interview and discuss matters with potential witnesses within the purview of this court's protective order issued herein, infra Part IV.

Lastly, the court declines to decide at this early juncture whether the government's attorneys in this habeas proceeding are prohibited from participating in any possible retrial or resentencing of the Petitioner as the Petitioner's § 2255 Motion is still pending and briefing on it is not yet complete. Such a request may be appropriate after a final decision on the Petitioner's § 2255 Motion.[6]

## IV. PROTECTIVE ORDER

For the above reasons, the Petitioner's Motion for Protective Order is **GRANTED**

---

**5.** In support of this request, the Petitioner cites cases from various district courts, which are not binding authority and involve issues not presented here. For example, the cases cited from the Southern District of West Virginia extensively discuss and rely on the American Bar Association's ("ABA") Model Rules of Professional Conduct 1.6 and 1.9(c), and the ABA's Formal Opinion 10–456. See, e.g., Hicks v. United States, Nos. 2:05cr40, 2:10cv1155, 2010 WL 5441679 (S.D.W. Va. Dec. 28, 2010). However, the local rules of the Southern District of West Virginia require consideration of the ABA Model Rules and related authority. See id. at *1 (citing S.D.W. Va. Civ. R. 83.7). The local rules of this court do not. See E.D. Va. Crim. R. 57.4(1); E.D. Va. Civ. R. 83.1(1) (establishing, with limited exception, that only the VRPC govern the "ethical standards relating to the practice of law" in cases before this court). Additionally, this court simply disagrees with the cases cited by the Petitioner to the extent they pro-

hibit ex parte communications between the government and former counsel in this situation, given the obvious need to fully develop and clarify the record in collateral proceedings.

The Petitioner also cites Virginia Legal Ethics Opinion 1859 (June 6, 2012) ("Opinion 1859"). First, Opinion 1859 is not binding on this court. Second, Opinion 1859 discourages "pre-litigation disclosure[s]" by attorneys against whom ineffective assistance of counsel claims have been alleged. Id. Here, the court has ordered the government to respond to the § 2255 motion and determined that the government has shown good cause for the requested discovery. See ECF No. 53; supra Part III.A. Moreover, said discovery will occur within the purview of the court's protective order, issued herein, infra Part IV, and thus under the court's supervision.

**6.** In so noting, the court does not rule or take a position on the matter at this juncture.

as set forth below. It is hereby **ORDERED** that the Petitioner's trial counsel file affidavit(s) with the court disclosing information to the extent reasonably necessary to respond to the allegations in the § 2255 Motion concerning counsel's representation of the Petitioner. To the extent former counsel reasonably believe necessary, they shall provide supporting documents and redact these documents, if the documents address other aspects of counsel's representation of the Petitioner that are not necessary for resolution of the Petitioner's claims about counsel's conduct and their communications. The attorney-client privilege, which attaches to the communications between the Petitioner and his former counsel, shall not be deemed automatically waived in any other federal or state proceeding. The affidavits and documents supplied by the Petitioner's former counsel shall be limited to use in this § 2255 proceeding, as shall any interviews the government conducts with potential witnesses. Outside of this § 2255 proceeding, the United States is prohibited from otherwise using the interviews and information from potential witnesses, and/or the affidavits, information, and documents disclosed by the Petitioner's former counsel, without further order of a court of competent jurisdiction or a written waiver by the Petitioner. The court retains the authority to vacate or modify this Protective Order, as appropriate and/or necessary.

The Petitioner's Motion for Protective Order is **DENIED** to the extent that the court declines to conduct in camera review of former counsel's affidavits or prohibit ex parte communications between the government and the Petitioner's former counsel. Finally, the Petitioner's Motion for Protective Order is **HELD IN ABEYANCE** to the extent the court declines to decide at this juncture whether government attorneys involved in this proceeding may participate in any future criminal proceedings involving the Petitioner.

## V. CONCLUSION

For the above reasons, the Petitioner's Motion for Stay of Discovery is **DENIED**, and the government's Motion to Compel is **GRANTED**. The Petitioner's Motion for Protective Order is **GRANTED IN PART, DENIED IN PART, and HELD IN ABEYANCE IN PART**.

The Petitioner's former counsel have thirty (30) days from entry of this Memorandum Order to file affidavits and documents in accordance with this Memorandum Order. The government's response to the Petitioner's § 2255 Motion is due thirty (30) days from the date of entry of the former counsel's filing. The Petitioner shall file any reply brief within fourteen (14) days of service of the government's response.

The Clerk is **DIRECTED** to send a copy of this Memorandum Order to counsel for the Petitioner, to trial counsel, and to the United States Attorney at Norfolk.

**IT IS SO ORDERED.**